# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### FEBRUARY 2000 SESSION



FILED

March 17, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. |
| | ) | M1999-00994-CCA-R3-CD |
| | ) | |
| vs. | ) | Davidson County |
| | ) | |
| EDWARD PINCHON, | ) | Hon. J. Randall Wyatt, Jr., Judge |
| | ) | |
| Appellant. | ) | (First Degree Murder) |
| | ) | |

FOR THE APPELLANT:

DWIGHT SCOTT
Attorney At Law
4024 Colorado Avenue
Nashville, TN 37209

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

DAVID H. FINDLEY
Asst. Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON, III
District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201

KATRIN MILLER
BRET GUNN
Asst. District Attorneys General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201

OPINION FILED: _____

AFFIRMED

JAMES CURWOOD WITT, JR., JUDGE

**OPINION**

The defendant, Edward Pinchon, appeals his first degree murder conviction which resulted from a Davidson County Criminal Court jury trial in September, 1999. The trial court imposed a sentence of life confinement in the Department of Correction, with the possibility of parole. In this appeal, the defendant complains that the evidence is insufficient to support the conviction and that the trial court erred when it instructed the jury that, should the defendant be convicted of first degree murder, he would receive a sentence of life with the possibility of parole. After review, we affirm the judgment of the trial court.

The evidence presented questions of witness credibility which the jury resolved in favor of the state. We judge the state's evidence, as accredited by the jury, to be sufficient to support the conviction for first degree murder. As to instructing the jury on the matter of sentencing, we hold that, in the face of a statutory prohibition of such an instruction, see Tenn. Code Ann. § 40-35-201(b) (Supp. 1999), the trial court erred; however, we hold that the error was harmless.

## I. Sufficiency of the Evidence

In the light most favorable to the state, the facts of the case are as follows. The defendant was seventeen years old on April 21, 1997, and he had been spending time, including overnight visits with the victim, Leslie Handy, a 42 or 43 year-old homosexual male. Although the defendant slept in the victim's bed when he stayed overnight, he testified that their sexual activity was limited to the victim fellating him. The victim occasionally purchased clothes for the defendant, and at the victim's request, the defendant kept these clothes at the victim's residence.

Much of the evidence inculpating the defendant came from the

2

testimony of Mary Jones, who was the victim's neighbor and had known him since he was a young boy when he had gone to school with her children. She had known about the victim's relationship with the minor defendant for "six months to a year." She testified the defendant would stay at the victim's house for about five nights a week and that they got along "pretty good." However, three or four days before April 21, she was in her lawn talking to the victim, who was a few feet away inside his kitchen, when she heard a slap. The victim said the defendant had slapped him, and the victim threatened to hit the defendant with a skillet. The defendant spent the night of April 20-21 at the victim's residence, and the victim took him to school on the morning of April 21.

On the evening of April 21, Jones was visiting with the victim in his house when the defendant arrived in the company of three other boys. At one point, the defendant playfully wrestled with the victim, who was wearing a "moo-moo" style dress and was seated in the living room floor. Jones testified that the defendant then went to the back of the house, returned to the living room with a shotgun, and ordered everyone to leave "because they was fixing to make love." The victim, who was not taking the defendant seriously, told him to stop acting the fool and to put away the shotgun. At some point, the defendant said he would "bust[] [the victim's] head to the fat." However, the defendant put away the shotgun, and he and his three companions left.

A few minutes later, the victim's phone rang, and Jones answered to find the defendant on the line. The defendant said he wanted to speak to the victim and that he was "going to kill that bitch." She gave the phone to the victim, who conversed with the defendant. Approximately fifteen minutes later, the defendant and his three companions returned to the victim's house. Jones was still present and quoted the defendant as saying, "How much you bet I won't kill that g--d----- bitch?" The defendant then told Jones that if she didn't want to see what happened

3

she had better leave. When the defendant pulled a .22 pistol out of his jogging pants, Jones retreated to her apartment next door. Ten seconds later, as she reached her steps, she heard a shot. As she stepped inside the door, she heard four or five more shots. She heard footsteps on the gravel outside and looked out to see the defendant and two of the boys running along the driveway. A neighbor who was outdoors a few houses away testified that he heard shots and then saw five or six young men run to a dark car and drive away.

Jones called the police, who arrived and found the victim's eyeglasses on the porch and his slippers between the storm door and the closed, wooden front door of the house. There were bullet holes in the door frame that indicated that bullets had struck the frame from the outside of the house. Inside, they found the victim in the floor, clutching the telephone, dead from a .22 bullet wound to the heart.

The theory of the defense was posited by the testimony of the defendant and two of the other young men, Vernon Grigsby and Jeffrey Pinchon,[1] who visited the victim's home that night. Although their stories conflicted in several respects, Grigsby, Jeffrey Pinchon, and the defendant testified that they and Josh Graham went in Graham's car to the victim's house twice on the evening of April 21, because the defendant wanted to get his clothes. During the first visit, the defendant playfully wrestled with the victim and procured the shotgun; however, they denied that the defendant made the love-making comment and denied that he threatened the victim in any way. The defendant retrieved a couple of items of clothing, and they left. In an hour or two, after the defendant decided that he wanted the rest of his clothes, they returned. The defendant put his clothes in a bag, and the defendant, Jeffrey Pinchon, and Grigsby went down the driveway and

---

[1]

      Jeffrey Pinchon is the defendant's cousin.

left Josh Graham behind. The defendant and Jeffrey Pinchon said that they raced to Graham's car in order to claim the front seat. Grigsby testified that Graham and the victim were having words on the victim's porch. The trio heard shots. Grigsby saw the victim falling through the front door and the door closing. They testified that Graham, with .22 pistol in hand, fled to the car.

All four got into the car, and Graham drove away. Grigsby testified that Graham threatened "to hurt us if we said anything." Jeffrey Pinchon testified that no one mentioned the shooting. Graham let the three boys out and left.[2] None of the boys called the police.

.

On July 31 or August 1, 1998, the defendant was arrested. On April 15, 1999, Josh Graham was murdered. The parties entered a stipulation of fact which indicated that a person had been charged with Graham's murder, that the case was apparently unrelated to the case on trial, and that the defendant had given the state notice of its defense that Graham was the perpetrator sometime in the weeks before Graham was killed.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the convicting evidence, this court

---

[2]

      The testimony of defense witnesses conflicted as to where Graham let them out of the car.

does not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Id. at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the state."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Id. at 914.

A crime may be established by direct evidence, circumstantial evidence, or a combination of the two. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). Before an accused may be convicted of a criminal offense based upon circumstantial evidence, the facts and the circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the

6

defendant, and that beyond a reasonable doubt." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). "A web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 484, 470 S.W.2d at 613.

The crime of first degree murder of which the defendant stands convicted is established by a showing that a defendant unlawfully, premeditatedly and intentionally killed another. See Tenn. Code Ann. §§ 39-13-201, -202(a)(1) (1997).

The evidence, even though circumstantial, supports the verdict in this case. It reflects that some disaffection was afoot between the parties, that the defendant threatened to kill the victim, and that moments before the fatal shot was fired the defendant displayed a gun of the same caliber that killed the victim.

Without question, the weight of the state's case rests upon the testimony of Mary Jones. In the defendant's brief, he complains that Jones's testimony was not corroborated. However, the testimony of a non-accomplice witness need not be corroborated. Jones's testimony, if believed, established circumstantially the elements of first degree murder, and the jury obviously accredited her testimony and gave it much weight, as was their prerogative. As explained above, on appeal we do not reweigh the evidence nor make assessments of witness credibility. We do not substitute evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95, (Tenn. Crim. App. 1995). The reconciliation of conflicts of facts in evidence is a matter entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). In this case, the jury has resolved the conflicts in favor of the state's theory, and we are powerless to interfere.

7

## II. **Jury Instruction**

In his second issue, the defendant complains that the trial judge erred when he instructed the jury as follows:

> The punishment for the offense of first degree murder in this case is life imprisonment or life imprisonment without the possibility of parole. The State, however, is not seeking life imprisonment without the possibility of parole, and therefore, should you return a verdict of guilty, the Court will impose a life sentence.

The basis for the defendant's complaint is Tennessee Code Annotated section 40-35-201(b) (Supp. 1999), which provides:

> (b) In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, and as necessary to comply with the Constitution of Tennessee, article VI, section 14, and § 40-35-301, the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on the possible penalties for the offense charged nor all lesser included offenses.

The state has conceded that the trial court erred in giving the instruction; however, in the context of the case as a whole, we believe the error was harmless. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

The trial court instructed the jury as to the offense of first degree murder and the lesser included offense of second degree murder, which is the knowing killing of another. Tenn. Code Ann. § 39-13-210 (1997). In order to show prejudice, the defendant must demonstrate that, but for the erroneous instruction, there is a reasonable probability the jury would have acquitted him of first degree murder and found him guilty of the lesser offense of second degree murder or guilty of no offense at all. However, the thrust of the defense theory was that Josh Graham shot and killed the victim, not that the defendant killed the victim while lacking the mental culpability necessary for first degree murder. On the other hand, the evidence presented by the state, if accredited by the jury, established not only

that the defendant killed the victim, but also that he did so premeditatedly and intentionally. Accordingly, we must conclude that, in the context of this case, any error in giving the instruction about a life sentence does not "affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). See State v. Billy Joe Henderson, No. 03C01-9804-CR-00139 (Tenn. Crim. App., Knoxville, June 18, 1999); State v. Teddy Echols, No. 03C01-9708-CR-00342 (Tenn. Crim. App., Knoxville, May 17, 1999); State v. Raymond Hale, No. 01C01-9712-CR-00564 (Tenn. Crim. App., Nashville, May 6, 1999). It is, at best, improbable that the jury would have opted for second degree murder, much less acquittal, had the instruction been omitted.

For these reasons, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE


CONCUR:

_____
JOE G. RILEY, JUDGE


_____
THOMAS T. WOODALL, JUDGE

9